Pee CtjRiam.
 

 Wilson got $350 of Carver, and gave an absolute bill of sale for a negro man Cato, Carver at the same time giving a bond, as Wilson states, allowing of a redemption by repayment of the money. The negro was delivered to Carver, and by him hired for some months to Wilson; and then returned and kept in possession by Carver, until the time of the filing of this bill. The bond was delivered to Carver voluntarily, as he says, but by fraudulent procurements, as Wilson says. The time for payment of the money was several times verbally prolonged, and $60 were paid for the hire of the negro by Wilson. The answer insists that it was a purchase with liberty to repurchase, and not a mortgage, and that after * the purchase Carver hired the negro to Wilson at $10 per month. A third person obtained judgment and execution- against Wilson, and upon that the constable sold the
 
 equity of redemption
 
 for $106, and Carver purchased it, and had a bill of sale from the constable. After this sale, M‘Ewing procured an assignment of this equity of redemption from Wilson and filed his bill against Wilson, to have the benefit of the equity. The answer states a refusal on the part of Carver to take a mortgage, or to take the negro otherwise than as a purchase. A replication was filed to the answer. The case being heard before the Circuit Court, a decree for redemption was made, allowing the defendant for principal and interest upon the $350 and for the $106 and interest, deducting the $60 aforesaid, and for the subsequent services of the slave, and the benefit of redemption by said decree, is transferred to M‘Ewing, the assignee, and the negro is thereby directed to be delivered to him upon the payment of the balance now due, be ing $226.07. The costs of the first suit between Wilson and Carver
 
 *338
 
 to be paid by Carver up to the time of filing the answer, and the defendant Wilson to pay the subsequent
 
 costs;
 
 and the said Wilson to pay to M‘Ewing the costs of the other suit; and from this decree Carvel’ appealed to this court. Carver’s counsel insisted that the bond was voluntarily surrendered, that it amounted to a release of all the right secured by it, whether of repurchase or redemption; also, that a bill for redemption could not be filed before the tender of the money due, even if it were a mortgage, and that Wilson ought not to be allowed for the services of the negro in the mean time; and that this was a purchase with liberty to repurchase.
 

 Henderson, a witness, said it was a mortgage, and that the money was
 
 loaned
 
 and secured by mortgage.
 

 If this be a mortgage, Carver must account for the * intermediate services. An agreement that
 
 these
 
 should go against the interest of lending on
 
 honor,
 
 yet in this court must be determined by law. And this prohibits the taking of more than lawful interest. All above that must be considered as in part discharge of the principal. In cases of usury, equity will order the payment, or refunding of all that is above the lawful interest. In cases of redemption of personals by bill in equity, the precedents are uniformly so. We will presently see whether this be a mortgage or not. As for anything stated in the bill and not noticed in the answer,
 
 that
 
 is not in
 
 issue,
 
 nor is it to be taken as true or otherwise. Neither is that to be taken as true which is asserted in the answer and is not proved. And as for the sale of the equity of redemption by execution, that, sale is not valid. For the
 
 fi.fa.
 
 is a common law execution, not leviable on a mere creature of equity not known to the common law, and, indeed, having arisen long since the foi’mation of this
 
 writ;
 
 though the advancement of money on it for the benefit of the mortgagor may, under some circumstances, turn him who makes the advancement into a creditor of the mortgagor, in place of the creditor whose debt is satisfied. But an assignee whose assignment is prior to the established claim of the.creditor thus satisfied, is not liable when he redeems to pay more than the money secured by the mortgage; the mortgagor himself
 
 is thus liable,
 
 because after redemption he is liable to pay the unsecured debt. And when he asks equity he will be required to do it to the mortgagee by payment of this sum also. So also of an executor who redeems, be
 
 *339
 
 cause by the redemption he has assets to satisfy the unsecured debt. So also of an heir. Presently we>will apply these rules. But for the present is this a conditional sale ? It is not at first an infirm transfer to be completed into an absolute sale, by a posterior act to be done by the purchaser. Is it a purchase with liberty to repurchase ? * Then the property is in the purchaser, to be divested by an after act, at the option of the vendor, who may or may not pay the sum stipulated at the time stipulated. The destruction of the property in the mean time is the loss of the purchaser. This is not a purchase with liberty to repurchase if it be a mortgage. Is it a mortgage? The allegations of the plaintiff and defendant are neither of them supported by proof, but both agree in this, that the bond was given up to the defendant. If the defendant will produce it, it will then show clearly whether the transaction is a mortgage, or purchase with liberty to repurchase. If he will not show it, the presumption is against him, and the complainant ought to be let in to parol testimony. And the parol testimony of Henderson states it to be a mortgage ; and that the money was loaned,
 
 not paid,
 
 and was secured by mortgage. Besides this, the money was of less value than the negro, v'hich is a circumstance not entirely to be overlooked. We do not rely upon the purchase of the equity of redemption by Carver, for that might be precautionary only, a measure suggested by his apprehensions. The other circumstances are in favor of its being a mortgage, and if so, Wilson may redeem upon payment of the mortgage money; and the other sum advanced for him and his assignee, after the advancement of the latter sum by Carver can only stand in his place. Carver ought to account for the intermediate value of the negro’s services, to be set off against the interest and principal. This is ordered by the decree; and as to the costs, these are regulated in the decree by proper considerations.
 
 Affirm the decree.
 

 See the authorities collected in King’s Digest, 2534, 2615, 2617, 2658, 6370, 8721.